IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-cv-836 |
| | ) | |
| $200,000 IN U.S. CURRENCY | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

The United States of America ("Plaintiff" or the "Government") initiated this *in rem* civil forfeiture proceeding on September 30, 2014, pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C) for the forfeiture of $200,000 in U.S. Currency ("Defendant Currency"). (Compl. at 1, ECF No. 1.) On January 6, 2015, Damian Phillips filed a Verified Claim to Defendant Currency, (Claim, ECF No. 7), and an Answer to the Complaint (Answer, ECF No. 8). Before the Court is Plaintiff's Motion for Summary Judgment, filed on March 4, 2016, which includes a motion to strike Mr. Damian Phillips' claim and answer based on lack of standing. (ECF No. 15; ECF No. 16 at 6.) For the reasons that follow, Plaintiff's Motion for Summary Judgment is granted.

I. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it might affect the outcome of the litigation, and a dispute is

"genuine" if the evidence would permit a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the nonmoving party bears the burden of proof on an issue, the moving party is entitled to judgment as a matter of law if the nonmoving party "fail[s] to make a sufficient showing on an essential element of [his] case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (noting that a "complete failure of proof" on an essential element of the case renders all other facts immaterial).

The party seeking summary judgment bears the initial burden of "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. To defeat summary judgment, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." Id. at 324. The nonmoving party must support its assertions by citing to particular parts of the record, such as affidavits, depositions, answers to interrogatories, and admissions on file. Fed. R. Civ. P. 56(c)(1); Celotex Corp., 477 U.S. at 324.

When reviewing a motion for summary judgment, the court must "'resolve all factual disputes and competing, rational inferences in the light most favorable'" to the nonmoving party. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)). This standard applies in forfeiture cases. See United States v. Bailey, 926 F. Supp. 2d 739, 753 (W.D.N.C. 2013).

## II. FACTS

On April 14, 2014, the Durham Police Department advised the Durham County Sheriff's Office that they had received information that a "strong odor of marijuana" was emitting from a section of storage units located at the Brassfield Self Storage facility located

2

at 2136 Page Road, Durham, North Carolina. (ECF No. 1-1 ¶ 5.) A Durham police officer met with members of the Sheriff's Department at the storage facility and directed them to building 200, units 11-21, the area he was told smelled like marijuana. (Id. ¶ 5.)

The Sheriff's Department requested a K-9 unit to conduct a free air sniff of the area in question. Deputy Carson responded with his K-9 "Frisco" and was directed to building 200, units 11-21. (Id. ¶ 6.) "Frisco" stopped and gave a positive indication of the scent of narcotics at unit 18. After giving this positive indication, Deputy Carson took "Frisco" to a set of interior units. "Frisco" did not alert on any of the interior units. Deputy Carson then had "Frisco" return to the line of units 11-21, building 200 and "Frisco" again alerted at unit 18. (Id.) Deputy Carson has been a canine handler and paired with "Frisco" for over six years. Together they have over 1,000 hours of training and have been certified with the National Police Canine Association and the Durham Police Department's K-9 Certification Course in Narcotics. (Id. ¶ 7.)

Based on the information received from the Durham Police Department and the positive canine alerts, the Sheriff's Department applied for and received a state search warrant for building 200, unit 18. (Id. ¶ 8.) With the assistance of management, the officers gained entrance to the unit. Inside were the following items: "a small desk, four tires, a suitcase, a black/grey duffle bag, burgundy duffle bag, a boxing bag, and a few other miscellaneous items." (Id. ¶ 9.) The suitcase found in the unit was "strong with the odor of raw marijuana, though none was found inside." (Id.) The black/grey duffle bag was located in the desk and contained a large sum of U.S. currency, in 12 vacuum-sealed plastic baggies. "The burgundy duffle bag contained two digital scales." (Id.) The vacuum-sealed baggies of

3

currency, scales, suitcase, and duffle bags were seized and transported back to the Sheriff's Department. (Id.) At the Sheriff's Department, "Frisco" once again alerted on the seized currency which had been placed in a brown paper bag next to other, empty, paper bags. (Id. ¶ 10.) The currency was counted and totaled $200,000.00 in U.S. currency.

The Sheriff's Department further determined, through its investigation, that Byron T. Phillips rented storage unit 18 on November 16, 2012. A record of unit access using Phillips' gate access number, 1929, revealed that the code had been used numerous times between November 16, 2012 and April 4, 2014 at all times of day and night. (Id. ¶ 11.) A check of Byron Phillips' criminal record revealed that he has served jail sentences for drug offenses involving marijuana in 2007 and 2009. Claimant, in this case, is Damian Phillips ("Mr. Phillips" or "Claimant"), Byron Phillips' brother. He claims that he is the owner of Defendant Currency and that he had placed the seized property in the storage unit for safekeeping.

## III. STANDING

As a threshold matter, the Government seeks to have Mr. Phillips' claim stricken on the basis that he lacks standing to contest the forfeiture. A claimant seeking the return of forfeited property must have standing to challenge the forfeiture. United States v. Real Prop. Located at 5201 Woodlake Drive, 895 F. Supp. 791, 793 (M.D.N.C. 1995). The burden of proof is on the claimant to establish standing by a preponderance of the evidence. United States v. $119,030.00 in U.S. Currency, 955 F. Supp. 2d 569, 576 (W.D. Va. 2013). Standing is derived from statute and Article III of the U.S. Constitution. Real Prop. Located at 5201 Woodlake Drive, 895 F. Supp. at 793. A claimant must establish both statutory and

4

Article III standing to proceed with his claim. United States v. $7,000.00 in U.S. Currency, 583 F. Supp. 2d 725, 729 (M.D.N.C. 2008) (citing United States v. $487,825.00 in U.S. Currency, 484 F.3d 662, 664 (3d Cir. 2007)). Statutory standing is not at issue in this action, (ECF No. 16 at 7), thus the Court need only examine whether Mr. Phillips has met his burden with respect to Article III standing.

Article III standing exists if a claimant "has a legally cognizable interest in the property that will be injured if the property is forfeited to the government." $7,000 in U.S. Currency, 583 F. Supp. 2d at 729 (quoting United States v. $38,000 in U.S. Currency, 816 F.2d 1538, 1543 n.12 (11th Cir. 1987)). Claimant's injury must be "'real and immediate,' not 'conjectural' or 'hypothetical.'" City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). "Courts generally do not deny standing to a claimant who is either the colorable owner of the [property] or who has any colorable possessory interest in it." $7,000 in U.S. Currency, 583 F. Supp. 2d. at 729 (alteration in original) (quoting United States v. Contents of Accounts Nos. 3034504 and 144-07143, 971 F.2d 974, 985 (3d Cir. 1992)).[1] One asserting an ownership interest must support the claim with evidence beyond a bare assertion of ownership. Id. at 729–30. There must be "other indicia of true ownership." Id. at 730 (citing United States v. One Lot or Parcel of Ground Known as 1077 Kittrell St., Norfolk, Va., 947 F.2d 942, 1991 WL 227792, at *2 (4th Cir. Nov. 7, 1991) (unpublished table decision)); see also United States v. Morgan, 224 F.3d 339, 343 (4th Cir. 2000) (same in criminal forfeiture context). "Ownership may be established by proof of actual possession,

---

[1] A colorable interest has been defined as an interest that is "plausible". See Engle v. Isaac, 456 U.S. 107, 122 (1982) (using "colorable" and "plausible" interchangeably in the habeas context).

5

control, title, and financial stake." $119,030 in U.S. Currency, 955 F. Supp. 2d at 576 (quoting United States v. One (1) 1983 Homemade Vessel Named Barracuda, 625 F. Supp. 893, 897 (S.D. Fla. 1986)).

Mr. Phillips does not, nor can he, claim a possessory interest in Defendant Currency. He was not present at the time Defendant Currency was seized and neither was he the owner nor the renter of the storage unit in which Defendant Currency was found. In addition, no personal items of Claimant were found with or near Defendant Currency to connect it with Mr. Phillips. Rather, Mr. Phillips argues that he is the owner of the seized property.[2] Mr. Phillips' evidence in support of his claim of ownership includes his own verified claim, a declaration from his brother (the renter of the unit in which the seized property was found), and assertions concerning what he claims is the legitimate source of the currency. (Resp. at 3–4, ECF No. 19.)

The verified claim of Mr. Phillips and the declaration of his brother, without more, are insufficient to support that he has standing. Mr. Phillips' verified claim merely states that

---

[2] A number of district courts, both in this circuit and others, "generally look to dominion and control, such as [actual] possession, title, [and] financial stake, as evidence of an ownership interest" to establish Article III standing. $7,000 in U.S. Currency, 583 F. Supp. 2d at 729 (quoting United States v. Funds from Prudential Sec., 300 F. Supp. 2d 99, 107 (D.D.C. 2004)). Though the Fourth Circuit has not published an opinion addressing whether evidence of dominion or control is required in order to show standing in civil forfeiture cases, see United States v. Batato, --- F.3d ---, 2016 WL 4254916, at *22 n.6 (4th Cir. Aug. 12, 2016), the Court in $7,000 in U.S. Currency, concluded that "the Fourth Circuit would almost assuredly apply the 'dominion and control' test, which it has applied in an unpublished civil forfeiture opinion and in the criminal forfeiture context." 583 F. Supp. 2d at 729. Mr. Phillips' claim would easily fail under the heightened standard articulated in these cases. The Court need not, however, forecast how the Fourth Circuit might rule on this issue as Mr. Phillips, in addition to having no possessory interest in Defendant Currency, has likewise failed to demonstrate any colorable ownership interest.

6

he is the owner of Defendant Currency and that the property was not used or intended to be used in exchange for controlled substances. See United States v. $104,250 in U.S. Currency, 947 F. Supp. 2d 560, 564–65 (D. Md. 2013) (finding no standing when only evidence was self-serving testimony that property was claimant's); see also United States v. $447,815 in U.S. Currency, No. 1:09cv204, 2011 WL 4083640, at *3 (M.D.N.C. July 26, 2011) (claims of ownership, standing alone, are insufficient to establish standing (citing Kadonsky v. United States, 216 F.3d 499, 508 (5th Cir. 2000))). Further, the declaration of his brother offers little to corroborate Mr. Phillips' ownership claim. The declaration provides, in pertinent part, that Byron Phillips rented the storage unit in which the seized property was found, that he allowed Mr. Phillips access to the unit, and that, to the "best of his knowledge," no one else had such access. (ECF No. 19-2.) There is no assertion that he ever saw Mr. Phillips in possession of Defendant Currency, that he witnessed Mr. Phillips place Defendant Currency in the storage unit, or that he had any specific knowledge of the source of Defendant Currency except for a blanket reference to Defendant Currency as Claimant's life savings. (Id.)

The Court must therefore look to the other "indicia of ownership" offered by Mr. Phillips to determine whether it is sufficient to show that he has a colorable interest and therefore a financial stake in Defendant Currency to establish standing.[3] Mr. Phillips asserts

---

[3] In evaluating an assertion of financial stake in seized property for purposes of standing, courts in this circuit consider whether a claimant has the financial means to accumulate the amount of money that was seized. See, e.g., United States v. $122,640 in U.S Currency, 81 F. Supp. 3d 482, 493–94 (D. Md. 2015); see also 1077 Kittrell St., 1991 WL 227792, at *2.

7

that he earned Defendant Currency from employment over the 11 years prior to its seizure and that he was frugal with these earnings during those years. Specifically, he states that he accrued most of the Defendant Currency from playing professional football in 2003 in addition to receiving a "sizable disability settlement" in 2009. (ECF No. 19 at 4, 8.) Mr. Phillips played football for three different teams in two separate leagues, both the NFL and the AFL, in 2003. (ECF No. 19-4 at 2.) However, he reports only each team's "potential base salary," not what he actually earned with any teams, and submits no tax returns or bank statements to corroborate his assertions. (Id.) Further, while Mr. Phillips did receive a settlement check in 2009 from the Indiana Firebirds, it was for $ 40,090.95, not the $50,000 he alleges. (ECF No. 16-13.)

The Government argues that Mr. Phillip's explanation of the source of the funds is not plausible given the lack of evidence confirming Defendant Currency's source. See United States v. $10,000 in U.S. Currency, 348 F. Supp. 2d 612, 617 (M.D.N.C. 2004) (explaining that "[t]he mere allegation of a highly unlikely legitimate source of income without some support to give the allegation credibility" does not rise to the level of an ownership interest (citation omitted)). The Government also argues that Mr. Phillips' behavior during the years in question "contradicts his assertions that he was in possession of a cash hoard." (ECF No. 21 at 3.)

The Government's evidence includes, among other things, the following: (1) Claimant's wife filed for bankruptcy on August 27, 2012, and by November 2012 the couple was $8,400 in arrears on the lease for their home (ECF No. 16-7 ¶¶ 2, 8; ECF No. 16 at 6); (2) Claimant's credit report reveals a number of accounts in Claimant's name that are

8

currently listed as "derogatory" (ECF No. 16-12 at 1); (3) Two cars owned by Claimant were repossessed during the period in question (ECF No. 19-4 at 4–5); and (4) Claimant applied for and received unemployment benefits for one full year (id. at 11). According to the Government, such evidence, in combination with Claimant's modest verifiable income, "is inconsistent with someone possessing [$200,000] in cash." $122,640 in U.S. Currency, 81 F. Supp. 3d at 494; see also 1077 Kittrell St., 1991 WL 227792, at *2. (concluding that plaintiff lacked standing because the overwhelming evidence showed that he could not "identify a credible source for these funds" and "what evidence he did present was inconsistent"). This Court agrees.

Further, Mr. Phillips' explanation for allegedly keeping Defendant Currency in closets in his home over an eleven-year period, and then in vacuum-sealed baggies in his brother's storage unit, is not plausible. He offers no explanation as to why Defendant Currency was contained in vacuum-sealed baggies. Some courts have noted that such a storage system can be meant to "hamper canine detection." United States v. $14,800 in U.S. Currency, No. ELH-11-cv-3165, 2012 WL 4521371, at *7 (D. Md. Sept. 28, 2012) (citing United States v. $84,615 in U.S. Currency, 379 F.3d 496, 502 (8th Cir. 2004)); see also $122,640 in U.S. Currency, 81 F. Supp. 3d at 493 ("Frequently, drug traffickers and couriers will place the currency in vacuum-sealed plastic bags to disguise the odor of controlled substances emanating from the currency.") He further states that he kept Defendant Currency first in his closet and then in the storage unit due to his discomfort with the banking industry, noting the Great Recession as an example.

9

Reviewing the evidence in the record as a whole, the Court concludes that Mr. Phillips' uncorroborated evidence, or lack thereof, is not plausible and is insufficient as a matter of law to support that he has standing to challenge forfeiture of Defendant Currency. Claimant has failed to carry his burden of establishing standing and his Claim and Answer must be stricken.

## IV. GOVERNMENT IS ENTITLED TO FORFEITURE

Although Claimant lacks standing, to prevail on its motion for summary judgment, "[t]he Government must still show an entitlement to a forfeiture judgment as a matter of law." United States v. 998 Cotton St., Forsyth Cty, N.C., No. 1:11-CV-356, 2013 WL 1192821, at *9 (M.D.N.C. Mar. 22, 2013). The Civil Asset Forfeiture Reform Act of 2000 places the burden on the government to establish that the currency is subject to forfeiture. 18 U.S.C. § 983(c)(1); see, e.g., United States v. Mondragon, 313 F.3d 862, 865 (4th Cir. 2002). The Government must show, by a preponderance of the evidence, that it was entitled to seize Defendant Currency based on "the totality of the circumstances." United States v. $864,400 in U.S. Currency, 1:05CV919, 2009 WL 2171249, at *2 (M.D.N.C. July 20, 2009), aff'd, 405 F. App'x 717 (4th Cir. 2010).

The Government contends that it is entitled to civil forfeiture on two grounds. The first is based on 21 U.S.C. § 881(a)(6), which permits forfeiture of "[a]ll moneys . . . furnished, or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter."

10

The second is based on 18 U.S.C. § 981(a)(1)(C), which provides for forfeiture of any property that "constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such an offense." "Specified unlawful activity" includes "dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" 18 U.S.C. §§ 1961(1)(A), 1956(c)(7)(A).

To show that property is subject to forfeiture, the Government must allege that sufficient facts "are more likely true than not." $864,400 in U.S. Currency, 2009 WL 2171249, at *2 (citing United States v. Kiulin, 360 F.3d 456, 461 (4th Cir. 2004)). Circumstantial evidence is sufficient to establish that Defendant Currency is either proceeds of, or traceable to, criminal activity. See United States v. $433,908 in U.S. Currency, 473 F. Supp. 2d 685, 690 (E.D.N.C. 2007) (citing United States v. Thomas, 913 F.2d 1111, 1117 (4th Cir. 1990)). Proceeds need not be tied to any particular drug transaction. 998 Cotton St., Forsyth Cty., N.C., 2013 WL 1192821, at *13 (citing United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985)). Here, the Government contends that there is overwhelming circumstantial evidence of narcotics trafficking in the storage unit rented to an individual with a history of drug trafficking. This evidence includes the "strong odor of marijuana" coming from the storage unit in question, the $200,000 in cash located in vacuum-sealed baggies, the dog alerts to the storage unit and the currency, and the presence of two sets of digital scales.

The Supreme Court has held that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." Florida v. Harris, 133 S. Ct. 1050, 1057 (2013). As such, an alert from a properly trained canine is entitled to a presumption of reliability. Id. Courts in this district have independently found the same. See, e.g., $864,000 in U.S. Currency, 2009 WL 2171249, at *3. In this case, there is evidence in the record that canine "Frisco" has been trained and certified to detect marijuana, cocaine, and heroin. (ECF No. 16-4 ¶ 1.) "Frisco" alerted to the Defendant Currency three times: twice in the field, and a third time in a controlled environment. (ECF No. 1-1 ¶¶ 6, 10.)

Additionally, courts have held that possession "large sums of cash" can be "strong evidence" that the cash is related to drug activity. United States v. Currency, U.S., $147,900, 450 F. App'x 261, 264 (4th Cir. 2011) (quoting United States v. $84,615 in U.S. Currency, 379 F.3d 496, 501–02 (8th Cir. 2004)); see also United States v. $252,300 in U.S. Currency, 484 F.3d 1271, 1275 (10th Cir. 2007) ("A large amount of currency, while not alone sufficient to establish a connection to a drug transaction, is strong evidence of such a connection.") The fact that the cash was stored in vacuum-sealed bags is also significant as such a storage system can be meant to "hamper canine detection." $14,800 in U.S. Currency, 2012 WL 4521371, at *7.

Lastly, it cannot be ignored that Mr. Phillips' brother, the renter of the storage unit in question, was twice convicted of marijuana-related offenses. Overlooking such a fact could potentially "[a]llow[] drug traffickers to shelter their profits by placing legal title to their property and possessions in the names of uninvolved third parties." United States v. 630

Ardmore Drive, City of Durham, Parkwood Twp., Durham Cty., N.C., 178 F. Supp. 2d 572, 583 (M.D.N.C. 2001); see also In re Bryson, 406 F.3d 284, 291 (4th Cir. 2005) (explaining that, to prevent manipulation of ownership by criminals, courts must look beyond bare legal title).

The Court concludes that the evidence offered by the Government, taken as a whole, is sufficient to demonstrate that Defendant Currency constitutes or is traceable to proceeds for illegal activity involving controlled substances and is therefore subject to forfeiture.

Mr. Phillips raises in his Response that, even if the Government shows entitlement to forfeiture by a preponderance of the evidence, that he is an "innocent owner" of Defendant Currency. See 18 U.S.C. § 983(d)(1) ("An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute."). However, "[i]f the claimant cannot establish that [he] has the required ownership interest, then [his] innocence is irrelevant." United States v. Munson, 477 F. App'x 57, 67 (4th Cir. 2012) (first alteration in original) (citation omitted). As this Court has concluded that Mr. Phillips has failed to show even a colorable ownership interest in Defendant Currency, see § III, *supra*, the innocent owner defense does not apply here. See 998 Cotton St., 2013 WL 1192821, at *9 (concluding that because claimant was "not an 'owner' for purposes of the civil forfeiture statute, she [could not] be an 'innocent owner'").

IT IS THEREFORE ORDERED that Mr. Phillips' claim to Defendant Currency (ECF No. 7) and Answer to the Complaint (ECF No. 8) are STRICKEN due to lack of standing.

13

Case 1:14-cv-00836-LCB-LPA   Document 27   Filed 09/28/16   Page 13 of 14

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (ECF No. 15) is GRANTED and Defendant Currency shall be and is hereby, forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

This, the 28th day of September, 2016.

/s/ Loretta C. Biggs
United State District Judge